JOHN GILBERT and others *v.* THE MORRIS CANAL AND BANK-
ING COMPANY.

If the erection of an embankment across, or other obstruction of a creek would not be
a public nuisance as obstructing public navigation, this Court will not interpose by
injunction o prevent it.

An individual may come into this Court if he is about to be injured by a public nui-
sance, and obtain an injunction to prevent it; but the Court must be satisfied that
it would be a public nuisance, or it will not interpose.

The bill, filed September 18, 1850, states, that the complain-
ants are seized in fee of a certain lot of land in the township of
Van Vorst, in the County of Hudson, containing 4 83-100 acres,
bounded on the south-west by a certain creek called Mill Creek ;
and that two of the complainants are seized of other lands lying
contiguous to the first mentioned lot ; upon which tracts of land
the complainants, in partnership, carry on the business of man-
ufacturing starch, and have large and costly buildings, apparatus
and machinery for the purpose of carrying on such manufacture.
That the quantity of land thus owned and occupied is more than
ten acres, and that the value of the lands, buildings, apparatus
and machinery used by the complainants in their said business,
on the said premises, is more than $40,000. That the said
manufacture has been carried on upon said premises by the
complainants or some of them for more than 22 years. That
in carrying on said business a copious supply of water is neces-
sary. That they now use about 150,000 gallons of water daily ;
and that it is necessary to have an outlet to discharge the water
used by them in the said manufacture into some large running
or tide stream, so that such water, which is loaded and impreg-
nated with the refuse part of the corn used in such manufacture
may be rapidly carried away, and that without this such water
would stagnate and become a nuisance by its intolerable smell
and unhealthy exhalations. That the materials used in their
said business are of great bulk and weight, and their transpor-
tation expensive. That they consume in their said business,

yearly, about 1500 tons of coal, and more than 50,000 bushels of grain; and that a water communication with the bay of New York, by which they can bring the boats laden with these articles to their premises, is of great value to them, and much lessens the costs of carrying on their business.   That for these reasons their factory was originally built in the vicinity of said Mill Creek, and they purchased the first above described lot.   And the complainant, William Colgate, when he erected the first factory upon said premises upon that part which he bought of Cornelius Van Vorst, in 1827, did, in May, 1828, obtain from said Van Vorst, who then owned the lands between the lot on which said first factory was built and said Mill Creek, an agreement in writing by and in which the said Van Vorst agreed, "that said William Colgate should at any future period have the privilege of digging and keeping open, at his cost or expense, a ditch of sufficient depth and width for a common New York lighter to approach his lands; the said ditch to run in a straight line to the nearest part of the creek."

. That the said creek is a navigable creek, in which the tide ebbs and flows, and empties into the bay of New York; and that the creek, in its natural state as it was before it was heretofore obstructed by the Morris Canal and Banking Company, in a manner similar to that now threatened and commenced by them as hereinafter complained of, was at ordinary high water navigable for lighters and vessels of more than 50 tons burthen, from its mouth unto and beyond the lot of land first above described; and that the tide flowed and ebbed in the same unto and beyond said lot to the depth of more than five feet.

That there formerly was a public landing on the said creek above the said lot, where the old road leading from Bergen town to the ferry at Powles' Hook crossed the same, from which sail boats of the burthen of 20 tons were in the habit of transporting market and other produce to the city of New York.   That if the obstructions unlawfully placed in the said creek were removed the same would now be navigable, unto and above the complainants' premises, for lighters and other vessels of 50 tons burthen.   That, owing to the comparatively small amount of

business done by the complainants at first, and to divers obstructions placed and maintained unlawfully in and over said creek, the complainants have not hitherto used it for the purposes of navigation ; but that, for the year last past, they have been making efforts to have the said unlawful obstructions removed, and the same cleared and made navigable as it was naturally, and still of right ought to be ; and that the use of said creek for navigation such as it is naturally capable of, and was formerly used for, would save to the complainants about $1200 yearly in the prosecution of their said business.

That the Morris Canal and Banking Company have located the line of their canal across said creek, so as to cross the same between its mouth and the said lot of the complainants ; and that the said Company intend to construct said canal across said creek by making the banks of said canal of solid embankments of earth or other materials extending across said creek and resting on its bottom, and to be raised above the surface of high water in said creek, in such manner as in a great measure to prevent the free flow and re-flow of the tide in the same, and without providing any opening through such banks or mounds for the passage of such vessels as could and did in its natural state navigate the same, and still of right ought to navigate the same, or for any boat or vessels whatever.   And that said Company and their workmen, agents and contractors, have begun and are now actually engaged in constructing such banks across said creek, and threaten and intend to go on with and complete the same.

That if the said Company go on and complete the said banks of said canal across said creek where they have commenced the same, and maintain them, the flow of the tides in said creek will be much impeded, and the navigation of the said creek be entirely prevented, and the complainants be thereby prevented from having the use and advantage of said creek in so large and beneficial a manner as they ought to have for the purposes of their said business, and from navigating the said creek from their premises to its mouth.

The bill prays, that the said Company may be forever re-

strained by injunction from erecting or maintaining across said creek, between its mouth and the said lot of the complainants, any banks or works by which the free flow of the tide may be obstructed or impeded, or by which boats, lighters or vessels (of such size as were adapted to the navigation of said creek in its natural state as it was before the original construction of the said Morris Canal) may be hindered or prevented from coming up and navigating the said creek; and for such further and other relief, &c.

On the reading of the bill and the affidavits thereto annexed, it was ordered that notice of the application be given to the defendants.

At a subsequent day, the parties appeared. And the answer of the defendants was read, and the affidavits annexed thereto.

The defendants admit, that the said Company have located the line of their canal across the said creek; and that they did, by means of the banks of their canal, obstruct the flow of water into the said creek. They say, that the construction of the canal, by means of banks across said creek, was done during or prior to 1835; and that the same was done by authority of and according to two acts of the Legislature, (stating them;) and that the said embankments were so continued across said creek, obstructing entirely the flow and re-flow of the water in said creek, until about eighteen hundred and —————, when gates were constructed in said embankments, so that by raising the said gates the water would flow and re-flow up and down the said creek; and it was usual for the said Company to cause the said gates to be opened about once in each week; and the said embankment, with the said gates, were continued across the said creek until about the year eighteen hundred and —————, when, in consequence of that part of the canal not being in much use, and for a considerable portion of the time not used for any purpose, the said embankment was suffered to go out of repair; but neither the said canal or the said embankments across the said

creek have at any time been abandoned, and were only suffered to get in bad repair on account of the pecuniary embarrassments of the said Company.

They say, that, when the said canal was constructed across the said creek, proceedings were duly taken, under and according to the provisions of the said acts of the Legislature, and all damages accruing to the owners of lands on the westerly side of said creek by reason of the said canal and its works, by obstructing the said creek or otherwise, were ascertained and paid ; and that Cornelius Van Vorst was then the sole owner of the land on the easterly side and margin of said creek, extending a number of hundred feet, as far up as the land of one Merselis, whose lands were situated farther up the said creek than the said lands now claimed by the complainants.; the lands of the said Van Vorst at that time comprising all that part of the lands now claimed by the complainants which border on the said creek.   And the said Van Vorst, being so seized, did, with his wife, license and authorize the construction of the said embankment across the said creek, and did, on the 27th June, 1837, convey to the said Company the lands required to be occupied by the said canal on the easterly side of the said creek for the purpose of having the said canal constructed across the said creek and on the lands easterly thereof, the said lands with the appurtenances being conveyed to the said Company and their successors and assigns, to their own proper use and benefit, as long as the same should constitute and be a part of the said canal and continue to be used and occupied as such.

That the said Merselis, who owned the lands on both sides of said creek above the said lands of said Van Vorst, (part of which lands of said Van Vorst are now claimed by the complainants or some of them,) at the time of the construction of the said canal, had a mill with a horizontal wheel which was impelled and moved by the flow and re-flow of the water in the said creek, situated on his lands.   That the said mill had been used for a great many years ; and, inasmuch as the water power that drove the said mill was derived from the flow and re-flow of the water as occasioned by the tides, it was impossible that any

other mill should be constructed below the mill of the said Merselis on the said creek without destroying the power which belonged to the said Merselis's mill.   And the defendants aver, that the said Merselis had the acknowledged and exclusive right to all the privileges of the said creek for milling purposes ; and that the said Merselis, with his wife, did, on the 24th November, 1835, about the time when the said Company erected the said embankments across the said creek, for and in consideration of $2,000 to them paid by the said Company, convey and release to the said Company all his right, title and interest in the water privileges of the said creek, by a deed which was recorded on the 29th July, 1837, in the Clerk's office of Bergen County. And these defendants insist, that, by reason of the proceedings had under the said acts of the Legislature and of the said license and conveyances from the said Van Vorst and wife and Merselis and wife, they have good right and title to continue, repair and maintain the said canal and its embankments across the said creek, at the place where it was first constructed.

The defendants aver, that the said Van Vorst and wife, long after they had given the license for the erection of the said embankment, and long after they had made the said conveyance to the said Company for the express purpose of having the canal constructed and continued across the said creek, and after these defendants had expended large amounts of money in repairing that part of their canal which extends from the Passaic to the Hudson river, and by deed dated July 10, 1849, did convey the said lands to the complainants for the consideration of $772. And these defendants aver, that the complainants took the said conveyance with full notice and actual knowledge of the erection of the said embankment, and of the said license, and of the said conveyance made by said Van Vorst to the said Company, and with full notice of the rights of these defendants to construct and continue their canal and embankments across the said creek, and of their intention so to continue it.   And they deny that the complainants, or any of them, are seized or possessed of any lands bordering on the said creek, excepting the said lands so conveyed to them by the said Van Vorst in 1849.

The defendants say, that, many years ago, a road from Bergen town to Jersey City was constructed across said creek; that the causeway from Newark to Jersey City also crosses over said creek; as does the road or street known as Grand street. That the said roads cross the said creek by means of common bridges, without any draws for the purpose of boats being made therein; and that, in about the year 1832, the New Jersey Railroad and Transportation Company, in constructing the embankment for their Railroad, filled and dammed up the said creek north of the lands so purchased by the complainants in 1849; and that in 1835 the embankments of the canal entirely closed off the said tides as aforesaid.

They say, that the said creek is a tide creek, in which, at high tide, the water is some two or three feet deep, and when the tide goes down is entirely empty of water; that there are many such creeks setting up into the salt meadows in the neighborhood of Jersey City, Newark and Elizabethtown; and that they are informed and believe, that, in making roads, constructing drains and making embankments for meadows, it has been customary to fill up or obstruct such creeks; and they submit that the said creeks are not what are properly called navigable. That they are generally and credibly informed, and believe, that the said Mill Creek was of no value to the public for the purposes of navigation, and that, in fact, it was not and is not at all navigable, except at certain times for very small boats, and is not considered, and cannot fairly be termed a navigable stream of water; that there are no settlements thereon, and no wharves thereon; that the public, before the construction of the canal, did not use it or value it as navigable water; and that the defendants know of no objection and have heard of no objection having been made to the erection of the obstruction to the passage of boats in said creek from the public. That it may be true that, at times of high water, some boats may have passed up said creek; and it may be true that, when the facility for communication with New York was much less than it now is, there was a place or landing where the farmers brought their produce for transportation to the New York market; but they

deny that the said creek was used for any such purpose for years before the construction of the said canal. They say, that prior to any obstruction being placed across the said creek it had been suffered to become in a good measure filled up with mud and other substances, and that at that time the said creek was considered of little or no value for the purpose of boating; and that at the present time, had the complainants, or any other person, a right to remove the obstructions across the said creek, the passage of boats in said creek of such trifling capacity would not be desirable, inasmuch as the land through which the creek runs is laid out in streets and building lots, and will be required to be filled up to render them available.

They say they have no knowledge of the agreement referred to in the bill as made by said Van Vorst to the complainant Colgate, dated May, 1828, by which, it is in the bill alleged, the said Colgate acquired the right of digging and keeping open a ditch, &c. And they say, that the first intimation they ever had of any such agreement was by the bill of complainant. That, if any such agreement was ever made, the same was never recorded; and the Morris Canal and Banking Company, at the time of the said conveyance by Van Vorst and wife to them, or since then, up to the time of the filing of the bill of complainant, had no notice or knowledge thereof, and are in no manner bound or affected thereby. And they say, that the complainants, or any of them, never acted under or claimed any right as against the said Company by reason of the said agreement, and have never made any other ditch than one, two or three feet wide, leading to the said creek, for the purpose of drying their land, or for the purpose of carrying off the refuse matter from their factory; but that the complainants have ever since acquiesced in, and so admitted, the right of the said Company to erect and maintain their said canal and embankments across the said creek; and that the said agreement, if ever made, does not convey any right to navigate the said creek, but simply authorizes a ditch of certain dimensions fixed by a convenient standard of measurement.

They say they are ignorant of the amount expended by the

complainants on their land; nor can that affect the right of these defendants; but, if it could, they aver that the lands are of much more value than before the construction of the canal. And they deny that the complainants have expended any thing on the lands bordering on the said creek.

They say they are ignorant of the motives which influenced the complainants, or some of them, in fixing their location on the site selected by them; but say, that they have good reason to believe that the idea of securing to themselves the navigation of said creek was never thought of by them; and that the said creek could not be used for such purpose; and, in fact, when the first purchase was made by William Colgate, in 1827, these lands did not extend to the said creek by four or five hundred feet; that none of the complainants owned any land on said creek until 1849. That, at the time of the first purchase, it appears by the bill, they were not even possessed of the pretended right of having a ditch, conveyed by the alleged agreement of 1828; nor had the complainants any such pretended right until after their factories were built. That the complainants, for a long course of years, never used or pretended to use, or make any preparations to use any right of navigation. That the complainants not only acquiesced in the construction and continuance of the said embankments, but, when these defendants expended about $42,000 in repairing the canal from Jersey City to Newark, as they did in 1845 and 6, the complainants, although knowing of such repair, set up no such right to the navigation of the said creek, but acquiesced in the right of these defendants to control the waters in said creek, and never set up any right in said creek until after the purchase made by the complainants in 1849. That, while the said creek was formerly navigable for small boats at high tide, the navigation, even before the canal was made, had ceased to be of any practicable value.

They say, that they do not know, but believe it is desirable that the complainants should have some means of removing the offensive refuse matter proceeding from their business; and, while they submit whether the complainants have any legal or equitable right to control, in any manner, the flow of water in

the said creek for any purpose; yet they deny that it is their intention to construct the embankments of their canal so as to prevent the flow and re-flow of the tides in said creek; but aver that it is, and, ever since they commenced to take measures for the repair of the canal at Mill Creek, has ever been their intention to make a sluice way, in size two feet by eight feet, and to leave the same at all times open; and that such aperture will be fully sufficient to allow the tides to flow and re-flow into and from the said creek, as it would do if such embankment was not made.

They say, that the said canal was originally constructed from the Passaic to the Hudson river by the authority of the Legislature, which had, as they submit, full power to confer such authority. That the said canal was so made at an expense of over $210,000. That about $67,000 have been expended by these defendants in the repair of the said canal from Newark to Jersey City. That if they are enjoined from constructing embankments across the said creek, the canal from the Passaic to the Hudson, or a great part thereof, will be worthless to these defendants, and they know of no practical route for the said canal without crossing the said creek; and that it is impossible to cross the said creek by means of a ferry, or by any other means than embankments.

There were several depositions annexed to the answer.

*A. O. Zabriskie* and *P. D. Vroom* in support of the application for an injunction. They cited 2 *Story's Eq. Jur.*, section 921, 4; *Saxton's Ch.* 192, 382; 19 *Ves.* 617; 6 *John Ch.* 439; *Angel on tide waters*, 57, 87, 88, 89, 90, 121; 1 *Pick. Rep.* 186; 1 *Zab. Rep.* 588; 5 *Wend.* 451; *Davies Rep.* 157; 11 *East.* 765; 7 *Man. & Granger*, 879; 2 *Ib.* 165; 1 *Barn. & Cresw.* 424; 23 *Pick.* 373, 398; 6 *Paige*, 565; 10 *Mass. Rep.* 70; 15 *Wend.* 132; 11 *Peters*, 420; 21 *Pick.* 344; 2 *John. Ch*, 439; 4 *Paige*, 510; 12 *Peters* 91; 1 *Railway cases*, 159.

*P. Bentley* and *F. T. Frelinghuysen* contra. They cited

*Saxton's Ch.* 384; 1 *Kent's Com.* 436, 7; 2 *Story's Eq. Jur.,* sec. 923, 4; 2 *Peters,* 245.

THE CHANCELLOR.   The creek is large enough, in width and depth of water, for useful purposes of navigation, if any such navigation were wanted, or would, with the present means of communication with New York, be ever used.   But, certainly, this creek will never be used for transportation between the head of it, or any point on it (it being, in its whole length, within a mile from the Jersey City ferry) and New York, now that there are steam ferry boats starting every few minutes, plying between Jersey City and New York, and carrying over wagons and vehicles of all descriptions, with their loads.   It would be idle to suppose, that, with such facilities for crossing the Hudson, at Jersey City, with loaded wagons, any person would unload at any point on this creek, and put his produce or other goods on board a boat for transportation by water to New York, twice the distance, and which would occupy thrice the time, or more, and be at the trouble and expense, on reaching New York, of re-loading his produce on a vehicle, for the purpose of carrying it to its destination in the city.

I cannot say that the shutting up of the creek would be a public nuisance, as obstructing public navigation; and this is the only ground on which this Court could interpose.   An individual may come into this Court, if he is about to be injured by the creation of a public nuisance, for an injunction; but in this case it is evident that the public do not, and would not use this creek for the purposes of navigation.

There is a bridge over this creek without a draw, and has been for eleven years, and the public have taken no step to open it for navigation.

Again, if the embankment proposed to be made by the defendants shall be considered a public nuisance, the nuisance may be abated by proceedings at law.

Application denied.